**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AARON GREENSPAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>EXECUTIVE OFFICE FOR U.S.<br>ATTORNEYS, *et al.*,<br><br>                    Defendants. | Civil Action No. 23-1816 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff Aaron Greenspan, proceeding *pro se*, seeks disclosure, pursuant to the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552, by defendants Federal Bureau of Investigation

("FBI"), Drug Enforcement Administration ("DEA"), and Central Intelligence Agency ("CIA") of

criminal investigative documents relating to two individuals, Bola Ahmed Tinubu ("Tinubu") and

Abiodun Agbele ("Agbele"), that plaintiff claims were generated during a federal investigation of

an international drug trafficking and money laundering ring in the early 1990s.  *See* Pl.'s Mem. of

P. & A. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 1, ECF No. 41-1; Joint Status Report

& Proposed Briefing Schedule ("JSR") ¶¶ 5-6, ECF No. 39 (describing plaintiff's agreement to

narrow the issues for summary judgment litigation); Defs.' Mem. of P. & A. in Supp. of Defs.'

Cross-Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n") at 1, ECF No.

43-1 (describing the "remaining disputes" in this case).  All three defendants have issued *Glomar*

responses refusing to confirm or deny whether the requested records exist, Pl.'s Mem. at 7; Defs.'

Opp'n at 2, which responses plaintiff now contests, seeking disclosure of the requested

1

information, *see generally* Pl.'s Mem.; Pl.'s Reply in Supp. of Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 44.[1]

For the reasons explained below, both parties' motions for summary judgment are granted in part and denied in part. Specifically, the *Glomar* responses asserted by defendants FBI and DEA are improper and must be lifted, while the *Glomar* response issued by defendant CIA is sustained.

## I.    BACKGROUND

Summarized below is the factual and procedural background relevant to the FOIA requests at issue and the parties' pending cross-motions for summary judgment.

### A.    Plaintiff's FOIA Requests

During 2022 and 2023, plaintiff filed twelve FOIA requests with six different federal government agencies and components: the FBI, DEA, CIA, Internal Revenue Service ("IRS"), Executive Office of United States Attorneys ("EOUSA"), and the United States Department of State, Second Am. Compl. ("SAC") ¶¶ 21-117, ECF No. 35, seeking information about a joint investigation conducted by the FBI, IRS, DEA, and the U.S. Attorney's Offices for the Northern District of Indiana and Northern District of Illinois into the activities, including money laundering, of a Chicago heroin ring that operated in the early 1990s, *id.* ¶¶ 1-2. Each of plaintiff's FOIA requests sought criminal investigative records about four named individuals allegedly associated with the drug ring: Bola Ahmed Tinubu, Lee Andrew Edwards, Mueez Abegboyega Akande, and

---

[1]    The moniker "*Glomar*" stems from a case in which a FOIA requester sought information about a ship named the "*Hughes Glomar Explorer*," and the CIA refused to confirm or deny any relationship with the *Glomar* vessel, since doing so would compromise national security or divulge sensitive intelligence sources and methods. *Phillippi v. CIA*, 655 F.2d 1325, 1329-31 (D.C. Cir. 1981). The D.C. Circuit upheld that approach, *see id.* at 1333, and now *Glomar* responses are proper "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption," *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007); *see also infra*.

Abiodun Agbele.  Defs.' Opp'n at 1; *see also* SAC ¶¶ 21-117.[2]  As the parties acknowledge, Bola Ahmed Tinubu is the current President of Nigeria.  *See* Pl.'s Mem. at 4; Defs.' Opp'n at 1.

Five of these FOIA requests are at issue in the parties' pending cross-motions for summary judgment.  Defs.' Opp'n at 4-8 (describing the five FOIA requests at issue); JSR ¶¶ 5-6 (describing plaintiff's agreement to narrow the issues for summary judgment briefing to defendants' *Glomar* responses, redactions, and withholdings as to Tinubu and Agbele only); *see also* Pl.'s Mem. at 5 (outlining eight FOIA requests, but three of which do not involve Tinubu or Agbele and thus are not at issue).  Each request at issue is described briefly below.

### 1.    FBI Request No. 1588244-000 (SAC Count 5)

On March 29, 2023, plaintiff submitted to the FBI an electronic FOIA request seeking "[t]he entire FBI file for Bola Ahmed Tinubu, DOB 3/29/1952, President-Elect of Nigeria as of February 2023."  SAC ¶ 54; SAC Ex. 22 at 2, ECF No. 35-22.  Less than a week later, the FBI, by letter, acknowledged receipt of the request, notified plaintiff of the assigned request number, and informed plaintiff that "the FBI will neither confirm nor deny the existence of such records," invoking FOIA exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6), (7)(C), to justify this response, since "[t]he mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy."  SAC ¶¶ 55-56; SAC Ex. 23 at 1, ECF No. 35-23.  This letter informed plaintiff that this course of action was the FBI's "standard response to such requests and should not be taken to mean that records do, or do not, exist."  SAC Ex. 23 at 1.  Plaintiff timely appealed this decision to the Department of Justice's Office of Information Policy ("OIP"), SAC ¶ 58; *see also* A-2023-01148, SAC Ex. 24,

---

[2]    Plaintiff notes that "Akande is referred to with his first name and middle name reversed, as Adegboyega Mueez Akande, in some documents."  Pl.'s Mem. at 1 n.2.  Where relevant, this opinion refers to Akande in the same way plaintiff does, as Mueez Adegboyega Akande.  *See id.*

ECF No. 35-24, and OIP affirmed the FBI's refusal to confirm or deny the existence of the requested records, SAC ¶ 60; SAC Ex. 25 at 1, ECF No. 35-25.  The FBI's response to this FOIA request is challenged in Count 5 of plaintiff's second amended complaint.  SAC ¶¶ 54-61, 138-142.

### 2.    FBI Request No. 1593615-000 (SAC Count 6)

In May 2023, plaintiff submitted to the FBI an electronic FOIA request for any "FBI 302 interviews with Bola Tinubu from FBI Case No. 245-IP-71386-UUUUUU during the timeframe 1992-1993."  SAC ¶ 62; *see also* SAC Ex. 26 at 2, ECF No. 35-26.[3]  Roughly a week later, the FBI, by letter, acknowledged receipt of the request, informed plaintiff of the request number assigned to this FOIA request, and advised plaintiff that "the FBI will neither confirm nor deny the existence of such records," again pursuant to FOIA exemptions 6 and 7(C), since merely acknowledging the existence of any such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  SAC ¶¶ 63-64; SAC Ex. 27 at 1, ECF No. 35-27.  This letter also informed plaintiff that issuance of this "standard response to such requests . . . should not be taken to mean that records do, or do not, exist."  SAC Ex. 27 at 1.  Plaintiff timely appealed the response to OIP, SAC ¶ 67; *see also* A-2023-01393, SAC Ex. 28, ECF No. 35-28, and OIP affirmed the FBI's response refusing to confirm or deny the existence of the requested records, SAC ¶ 69; SAC Ex. 29 at 1, ECF No. 35-29.  The FBI's response to this FOIA request is challenged in Count 6 of plaintiff's second amended complaint.  SAC ¶¶ 62-70, 143-147.

### 3.    DEA Request No. 22-00892-F (SAC Count 9)

---

[3]     The parties' filings are inconsistent as to whether this request was filed on May 23, 2023, *see* SAC ¶ 62; Pl.'s Mem. at 5, or May 25, 2023, *see* Defs.' Opp'n at 5, although the FBI's affiant notes that the request was time stamped on May 25, 2023, Defs.' Opp'n, Decl. of Michael G. Seidel, Section Chief of the Record/Information Dissemination Section, FBI's Information Management Division ("Seidel Decl.") at 5 n.3, ECF No. 43-3.

On July 21, 2022, plaintiff submitted to DEA a FOIA request seeking "[a]ny records from the DEA's Hammond, Indiana or Washington, D.C. offices concerning the Nigerian heroin distribution organization active from approximately 1988 to 1994 or later involving any of the following third parties Tinubu, Bola Ahmed and Edwards, Lee Andrew." SAC ¶ 87; SAC Ex. 41 at 1-2, ECF No. 35-41. The request explained that the "organization is described in a civil forfeiture complaint and IRS CI affidavit in ILND Case No. 1:93-cv-04483." SAC ¶ 87; SAC Ex. 41 at 2. DEA assigned a reference number to the request on the same day. SAC ¶ 88; SAC Ex. 42, ECF No. 35-42. One month later, plaintiff was informed that DEA would "neither confirm nor deny the existence of such records pursuant to Exemptions 6 & 7(C) of the FOIA," since "[e]ven to acknowledge the existence of law enforcement records on another individual could reasonably be expected to constitute an unwarranted invasion of personal privacy." SAC ¶ 89; SAC Ex. 43 at 1, ECF No. 35-43. The letter advised that this response was DEA's "standard response to such requests and should not be taken to mean that records do, or do not, exist." SAC Ex. 43 at 1. Plaintiff timely appealed DEA's response to OIP, SAC ¶ 91; *see also* A-2022-01983, SAC Ex. 45, ECF No. 35-45, which response OIP affirmed roughly three months later, SAC ¶ 93; SAC Ex. 46, ECF No. 35-46. DEA's response to this FOIA request is challenged in Count 9 of plaintiff's second amended complaint. SAC ¶¶ 87-94, 158-162.[4]

### 4.    DEA Request No. 24-00201-F (SAC Count 11)

On December 5, 2023, plaintiff submitted to DEA another FOIA request seeking "[t]he DEA case file for Abiodun Agbele, located in either the Northern District of Indiana or the Northern District of Illinois, from January 1, 1990 – December 31, 1995." SAC ¶ 105; SAC Ex. 52 at 3, ECF No. 35-52. Approximately three weeks later, DEA informed plaintiff that it would

---

[4]    Plaintiff has waived any claims relating to Lee Andrew Edwards arising from this same count of the second amended complaint and the underlying FOIA request. JSR ¶ 5.

"neither confirm nor deny the existence of such records," again pursuant to FOIA Exemptions 6 and 7(C), due to the "unwarranted invasion of personal privacy" that "could reasonably be expected" were such records acknowledged.  SAC ¶ 107; SAC Ex. 54 at 1, ECF No. 35-54.  As in the other responses provided to plaintiff, DEA advised that the response "should not be taken to mean that records do, or do not, exist."  SAC Ex. 54 at 1.  On December 27, 2023, the same date of DEA's letter, plaintiff timely appealed DEA's response to OIP, SAC ¶¶ 107, 109; *see also* A-2024-00525, SAC Ex. 56, ECF No. 35-56, and as of the time plaintiff filed the second amended complaint on March 24, 2024, OIP had yet to respond to this appeal, SAC ¶ 111-12, which timeline exceeded the 20 working days timeline for deciding an appeal established by the FOIA, 5 U.S.C. § 552(a)(6)(A)(ii).[5]  DEA's response to this FOIA request is challenged in Count 11 of plaintiff's second amended complaint.  SAC ¶¶ 105-12, 168-72.

### 5.    CIA Request No. F-2023-01008 (SAC Count 12)

On March 23, 2023, plaintiff submitted to the CIA a FOIA request seeking records concerning "1. Bola Ahmed Tinubu 2. Mueez Adegboyega Akande a/k/a Adegboyega Mueez Akande, Both Nigerian citizens, from January 1, 1985 – December 31, 2021."  SAC ¶ 113; *see also* CIA Letter, SAC Ex. 57, ECF No. 35-57.  At the time plaintiff filed the instant case, no response had been received from the CIA, though the request had been submitted about three months earlier.  *See* SAC ¶¶ 113-16.  The CIA subsequently acknowledged the request and informed plaintiff of the assigned request number in July 2023, *id.* ¶ 116; CIA Letter, roughly one month after the instant case was initiated.  In October 2023, approximately four months after the instant case was filed, *see* Compl., ECF 1, and two months after the CIA was added as a defendant

---

[5]    According to defendants, plaintiff was informed by OIP, on June 21, 2024, almost six months after his appeal was filed, *see* SAC ¶ 109, that his appeal file would be closed due to the filing of plaintiff's lawsuit.  Defs.' Opp'n, Decl. of Angela C. Davis, DEA's Unit Chief of the Freedom of Information/Privacy Act Unit ("Davis Decl.") ¶ 17, ECF No. 43-4.

in this litigation, *see* First Am. Compl. ("FAC"), ECF No. 8, the CIA issued a *Glomar* response refusing to confirm or deny the existence or nonexistence of records responsive to his request, pursuant to FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1), (3).  Defs.' Opp'n, Decl. of Mary C. Williams, Litigation Information Review Officer, CIA's Information Review and Release Division ("Williams Decl.") ¶¶ 7, 9-27, ECF No. 43-5.  The CIA's response to this FOIA request is challenged in Count 12 of plaintiff's second amended complaint.  SAC ¶¶ 113-17, 173-77.[6]

### B.    Procedural History

Plaintiff filed the instant lawsuit on June 12, 2023, originally naming the FBI, DEA, IRS, EOUSA, and Department of State as defendants and challenging each agency's response to eight separate FOIA requests.  *See* Compl.  The CIA was added as a defendant in the First Amended Complaint, along with a challenge to that agency's *Glomar* response to plaintiff's FOIA request. *See* FAC at 1, ¶¶ 82-86, 127-31.

On October 20, 2023, plaintiff filed an emergency motion seeking a hearing to compel defendants immediately to produce records responsive to his FOIA requests, citing the Nigerian Supreme Court's plan to begin hearing arguments in three days' time in litigation contesting Bola Tinubu's election as the President of Nigeria.  Pl.'s Emergency Mot. for Hearing to Compel Immediate Doc. Produc. at 1-2, ECF No. 17.  The motion claimed that the "sudden advance in timing" of the Nigerian Supreme Court's hearing was intended to "front-run the release of responsive FOIA documents from the defendants in this action," which documents plaintiff claimed would "likely be directly relevant" to the proceedings.  *Id.* at 2.  Plaintiff's emergency motion was denied on October 23, 2023, for failure to satisfy any of the requirements for

---

[6]    Plaintiff challenges the CIA's *Glomar* responses issued as to Tinubu but not as to Akande.  JSR ¶ 6; *see also* Williams Decl. ¶ 8 (noting the declarant's understanding that plaintiff "is only challenging the Agency's Glomar response to Part 1 of Plaintiff's request (related to records concerning Tinubu), and not the Agency's Glomar response to Part 2 (concerning records related to Akande)").

emergency injunctive relief, Mem. & Order, ECF No. 21, and a subsequent motion for reconsideration, ECF No. 22, was also denied, Mem. & Order, ECF No. 32.

Also on October 23, 2023, Nigerian President Tinubu moved to intervene in the case, citing his privacy interests in his "confidential tax records" and "documents from federal law enforcement agencies that fall within the Privacy Act or exceptions to FOIA and should not be disclosed." Mot. to Intervene at 1, ECF No. 18. This motion was granted over plaintiff's opposition, *see* Pl.'s Opp'n to Bola A. Tinubu's Mot. to Intervene, ECF No. 19, and with defendants declining to take a position, *see* Defs.' Resp. to Bolaa Tinubu's Mot. to Intervene, ECF No. 20. Min. Order (Nov. 27, 2023).

In March 2024, plaintiff filed his second amended complaint, adding three new FOIA requests to the case for a total of twelve individual FOIA requests at issue. *See* SAC ¶¶ 158-77. After defendants answered, in August 2024, the parties advised the Court that plaintiff had narrowed all FOIA requests at issue in the case "to only those documents . . . already . . . analyzed for processing by the respective agency defendants as of . . . July 11, 2024," JSR ¶ 4, and that plaintiff wished to proceed to summary judgment briefing, *id.* ¶ 5. To enable this "atypical" step, plaintiff agreed to waive "all challenges related to claims where processing" was not yet complete, resulting in the waiver of any claims relating to Counts 2, 7, and 10 of the second amended complaint, as well as any records related to Lee Edwards in Count 9, and "any corresponding allegations related to these requests raised in" Count 13, which sought declaratory judgment. *Id.* Plaintiff also agreed to limit summary judgment briefing to challenges to the "FBI, DEA, and CIA's Glomar responses as to Tinubu," the DEA's *Glomar* response as to Agbele, and any redactions and withholdings as to Tinubu and Agbele. *Id.* ¶ 6. Pursuant to the parties' agreement, a summary judgment briefing schedule was issued, Min. Order (Aug. 8, 2024), and defendants

EOUSA, IRS, and Department of State were dismissed from this litigation, *see* JSR ¶ 7; Stipulation

of Dismissal, ECF No. 40; Min. Order (Aug. 13, 2024).  The parties subsequently briefed summary

judgment on the propriety of the remaining defendants' *Glomar* responses to the five FOIA

requests at issue.  *See generally* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 41; Pl.'s Mem.;

Defs.' Cross-Mot. for Summ. J. & Combined Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Cross-

Mot."), ECF No. 43; Defs.' Opp'n; Pl.'s Reply; Defs.' Reply in Further Supp. of Their Cross-Mot.

for Summ. J. ("Defs.' Reply"), ECF No. 46.  These motions are now ripe for consideration.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 entitles a party to summary judgment "only if there is

no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law."

*Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see also* Fed.

R. Civ. P. 56(a).  Most FOIA cases "can be resolved on summary judgment."  *Brayton v. Off. of*

*the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

FOIA "requires federal agencies to make records publicly available upon request unless

one of nine exemptions applies."  *Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1012

(D.C. Cir. 2024).  The law balances two important-but-sometimes competing interests: "pierc[ing]

the veil of administrative secrecy" to "open agency action to the light of public scrutiny," *Cabezas*

*v. FBI*, 109 F.4th 596, 602 (D.C. Cir. 2024) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173

(1991)), and protecting "legitimate governmental and private interests [that] could be harmed by

release of certain types of information," *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 913 F.3d 1106,

1108 (D.C. Cir. 2019) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)).  To accommodate

both goals, FOIA's nine enumerated exemptions "are to be 'narrowly construed,'" *Cabezas*, 109

F.4th at 602 (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011)), but still given

"meaningful reach and application," *id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).

As a general rule, "agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011). An exception exists, however, for cases where "merely acknowledging the existence of responsive records would itself 'cause harm cognizable under a FOIA exception.'" *PETA v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (brackets omitted) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). In that circumstance, "an agency can issue a *Glomar* response, refusing to confirm or deny its possession of responsive documents." *Id.* "A *Glomar* response is valid 'if the fact of the existence or nonexistence of agency records falls within a FOIA exemption,'" *id.* (quoting *Wolf*, 473 F.3d at 374), which determination requires "courts [to] apply the general exemption review standards established in non-*Glomar* cases," *Wolf*, 473 F.3d at 374 (citing *Gardels v. CIA*, 689 F.2d 1100, 1103-05 (D.C. Cir. 1982)). The federal agency invoking a FOIA exemption to withhold requested information bears the burden of establishing that the claimed exemption applies. *Watkins L. & Advoc., PLLC v. U.S. Dep't of Justice*, 78 F.4th 436, 450 (D.C. Cir. 2023); *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 813 (D.C. Cir. 2021) (applying the same standard to an agency seeking to sustain a *Glomar* response).

To satisfy this burden, "courts may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (citation omitted). To warrant a grant of summary judgment in the agency's favor, the submitted affidavits, even if not contradicted, must "describe[] the justifications for

withholding the information with specific detail" and "demonstrate[] that the information withheld logically falls within the claimed exemption." *DiBacco v. U.S. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019) (citation, internal quotation marks omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

## III.    DISCUSSION

Plaintiff challenges as "[i]mproper," Pl.'s Mem. at 7, the *Glomar* responses made to the five FOIA requests at issue in the pending cross-motions for summary judgment: two from the FBI, two from DEA, and one from the CIA, *see* Defs.' Opp'n, Decl. of Michael G. Seidel, Section Chief of the Record/Information Dissemination Section, FBI's Information Management Division ("Seidel Decl.") ¶¶ 6, 11, ECF No. 43-3 (describing the FBI's *Glomar* responses); Defs.' Opp'n, Decl. of Angela C. Davis, DEA's Unit Chief of the Freedom of Information/Privacy Act Unit ("Davis Decl.") ¶¶ 7, 15, ECF No. 43-4 (describing DEA's *Glomar* responses); Williams Decl. ¶ 7 (describing the CIA's *Glomar* response). He is correct as to the two U.S. Department of Justice ("DOJ") components, the FBI and DEA, but not as to the CIA.

A FOIA requester may challenge the propriety of an agency's *Glomar* response in two ways: first, by "challeng[ing] the agency's assertion that confirming or denying the existence of any records would result in a cognizable harm under a FOIA exemption," *Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 326 (D.D.C. 2015) (citing *PETA*, 745 F.3d at 540, *Elec. Priv. Info. Ctr. v. NSA*, 678 F.3d 926, 932 (D.C. Cir. 2012), and *Roth*, 642 F.3d at 1172), and, second, or in addition to the first method, showing that the agency "has 'officially acknowledged otherwise exempt information through prior disclosure,'" meaning that the agency

"has 'waived its right to claim an exemption with respect to that information,'" *Knight First Amend. Inst.*, 11 F.4th at 813 (quoting *ACLU v. CIA ("ACLU/CIA")*, 710 F.3d 422, 426 (D.C. Cir. 2013)).  Here, plaintiff asserts both types of challenges to defendants' *Glomar* responses, arguing that (1) DEA has officially confirmed investigations of Agbele's involvement in the drug trafficking ring, *see* Pl.'s Mem. at 9-10; Pl.'s Reply at 5-6; (2) the FBI and DEA have both officially confirmed investigations of Tinubu relating to the drug trafficking ring, *see* Pl.'s Mem. at 7-10; Pl.'s Reply at 1-2, 5-6; (3) any privacy interests implicated by the FOIA requests to the FBI and DEA for records about Tinubu are overcome by the public interest in release of such information, Pl.'s Mem. at 11-13; Pl.'s Reply at 3-5; and (4) the CIA has officially acknowledged records responsive to plaintiff's FOIA request about Tinubu, Pl.'s Mem. at 11.  Each argument will be considered in turn.

### A.    The DEA's *Glomar* Response as to Agbele

Plaintiff first asserts that the existence of records responsive to his FOIA request for DEA's case file on Abiodun Agbele, *see supra* Part I.A.4., has been officially confirmed by an FBI production in this case and by publicly filed court documents, requiring the lifting of DEA's *Glomar* response.  Pl.'s Mem. at 9-11.  While the FBI's FOIA production does not result in an official confirmation sufficient to lift DEA's *Glomar* response, publicly filed court records do.

### 1.    The FBI's FOIA Disclosure Does Not Invalidate the DEA's *Glomar* Response.

Both parties agree that Agbele's name appeared in documents produced to plaintiff by the FBI on June 10, 2024.  Pl.'s Statement of Material Facts as to Which There Is No Genuine Issue, Pursuant to Local Rule 7(h) ("Pl.'s SUMF") ¶ 13, ECF No. 41-2; Defs.' Opp'n to Pl.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Defs.' Resp. to Pl.'s SUMF") ¶ 13,

ECF No. 43-2.[7]  Even assuming this disclosure confirmed that the FBI investigated Agbele, as plaintiff asserts, *see* Pl.'s Mem. at 10, plaintiff fails to explain how this information would preclude DEA, a different law enforcement agency, from asserting a *Glomar* response to plaintiff's FOIA request seeking records about a purported DEA investigation.  In fact, binding case law requires the opposite conclusion.

A plaintiff claiming that information sought through a FOIA request has been officially acknowledged "must point to 'specific information in the public domain that appears to duplicate that being withheld.'"  *Knight First Amend. Inst.*, 11 F.4th at 813 (quoting *ACLU/CIA*, 710 F.3d at 427); *see also Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (establishing official acknowledgment requires showing "(1): 'the information requested must be as specific as the information previously released'; (2) 'the information requested must match the information previously disclosed'; and (3) 'the information requested must already have been made public through an official and documented disclosure.'" (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990))).  In the *Glomar* context, this requirement means that "the prior disclosure must confirm the existence or nonexistence of records responsive to the FOIA request."  *Knight First Amend. Inst.*, 11 F.4th at 813 (citation omitted).  This test is applied "strictly."  *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011).

Here, the information disclosed by the FBI does not confirm whether DEA records responsive to plaintiff's FOIA request exist.  As plaintiff explained, the records produced by the FBI disclosed that "Agbele was involved with [the FBI's] investigation of the Chicago Narcotrafficking Ring."  Pl.'s Mem. at 10.  What plaintiff requested from the DEA in the relevant FOIA request, however, was "[t]he DEA case file for Abiodun Agbele."  SAC ¶ 105; SAC Ex. 52

---

[7]    Defendants' response to plaintiff's SUMF starts on page 16 of the cited document.

at 3. Disclosure of an FBI record containing Agbele's name in no way acknowledges that the DEA—a separate DOJ component with its own law enforcement activities and priorities—was investigating Agbele, or specifically that the DEA opened and maintained a "case file" on him.

Plaintiff's protestations to the contrary are unavailing. Whether plaintiff believes that, based on the FBI's disclosures, "the FBI and DEA worked together throughout the course of the investigation in which Agbele was involved," Pl.'s Reply at 6, is simply not the relevant question, as "[l]ogical deductions are not . . . official acknowledgments," *Valfells v. CIA*, 717 F. Supp. 2d 110, 117 (D.D.C. 2010). As defendants persuasively argue, the disclosed FBI record "does not even mention the DEA, let alone establish a specific . . . disclosure that matches the Agbele information" requested by plaintiff. Defs.' Opp'n at 32. Applying the D.C. Circuit's official acknowledgment test "strictly," as required, *see Moore*, 666 F.3d at 1333, the FBI's FOIA disclosure did not waive DEA's right to issue a *Glomar* response.

### 2. DOJ's Public Court Filings Waived the DEA's Ability to Issue a *Glomar* Response.

Other documents identified by plaintiff, however, constitute an official acknowledgment that DEA investigated Agbele and thus preclude DEA from asserting a *Glomar* response for DEA investigative records of Agbele. For instance, plaintiff attached to his motion a verified complaint and accompanying affidavit, filed in the Northern District of Illinois by DOJ on July 26, 1993, seeking the civil forfeiture of funds allegedly connected to the drug trafficking investigation. *See* Pl.'s Mem. at 7-8; Pl.'s Mot., Ex. A, Verified Compl. for Forfeiture, *United States v. Funds in Acct. 263226700 Held by First Heritage Bank in the Name of Bola Tinubu*, No. 1:93-cv-04483, ECF No. 41-4 at 2 [hereinafter Forfeiture Compl.]; Pl.'s Mot. Ex. A, Aff. of IRS Special Agent Kevin Moss, attached to Forfeiture Compl., ECF No. 41-4 at 5 [hereinafter Moss Aff.].

The Moss Affidavit explicitly discloses, in at least four separate paragraphs, that DEA investigated Agbele. First, the affidavit states that upon arrival in the United States, "Agbele identified Akande as his uncle and stated that Akande provided him (Agbele) an apartment in Hammond, Indiana," citing "investigating agents of DEA" as the source of this information. Moss Aff. ¶ 10. Furthermore, "[a]ccording to DEA investigators, Agbele sold white heroin to [another individual] on numerous occasions," and "[w]ith the assistance of Source A, DEA called Agbele to purchase a small amount of white heroin," which resulted in a transaction where "Agbele sold one ounce of white heroin to a law enforcement officer working in an undercover capacity." *Id.* ¶ 11. Subsequent to this sale, "Agbele was arrested and agreed to cooperate" with the investigation. *Id.* ¶ 12. The affidavit also states that "[f]urther investigation by DEA disclosed" a lease application completed by Agbele. *Id.* ¶ 16. The authenticity of this affidavit by IRS Special Agent Moss is not contested. *See generally* Defs.' Opp'n; Defs.' Reply; Defs.' Resp. to Pl.'s SUMF.

Defendants argue that any statements in the Moss Affidavit cannot be imputed to DEA, since "the affidavit of a Department of Treasury IRS special agent is not an official public disclosure" of DEA, Defs.' Opp'n at 27, and the mere "filing of the IRS agent's affidavit as an exhibit to a complaint does not transform the affidavit into an official disclosure of the Department of Justice and its components," *id.* at 28. These assertions are not persuasive for at least three reasons.

First, as defendants recognize, *see* Defs.' Opp'n at 27-28, public court filings by DOJ constitute official acknowledgment of the filed documents, which acknowledgment binds not only DOJ but also any of its components. *See Knight First Amend. Inst.*, 11 F.4th at 817 ("[I]f a Department of Justice prosecutor introduces certain records as evidence in court, other DOJ

components may not claim FOIA exemptions as to those records." (citing *Marino v. DEA*, 685 F.3d 1076, 1082 (D.C. Cir. 2012); *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279-82 (D.C. Cir. 1992))); *Marino*, 685 F.3d at 1082 ("[A] federal prosecutor's decision to release information at trial is enough to trigger the public domain exception where the FOIA request is directed to another component *within* the Department of Justice." (emphasis in original) (citing *Davis*, 968 F.2d at 1279-82)).  DEA is a component of DOJ, *see Component Contact Information*, U.S. Dep't of Justice, https://www.justice.gov/component-contact-information (last updated Aug. 22, 2024) (listing DEA as a component of DOJ); *Marino*, 685 F.3d at 1082 (recognizing that information released in court by federal prosecutors constitutes a disclosure of DEA), and defendants do not claim that the Forfeiture Complaint or Moss Affidavit were not publicly available, *see* Defs.' Resp. to Pl.'s SUMF ¶ 7; Defs.' Opp'n at 27 (acknowledging that "a publicly accessible court filing could be an official and documented disclosure" and not contesting that the Forfeiture Complaint and Moss Affidavit were part of a publicly accessible court filing).

Second, the Moss Affidavit was not merely filed "as an exhibit" to the Forfeiture Complaint, as defendants suggest, Defs.' Opp'n at 28, but was explicitly "incorporated by reference into [the] complaint," Forfeiture Compl. ¶ 3; *see also* Pl.'s Mem. at 2, 7, 8 (highlighting this point); Pl.'s Reply at 1-2 (same).  Defendants are incorrect that this distinction does not change the ultimate "source of the disclosure."  Defs.' Reply at 3.  On the contrary, "when a document incorporates outside material by reference, the subject matter to which it refers *becomes part of the incorporating document just as if it were set out in full.*"  *BP Amoco Corp. v. NLRB*, 217 F.3d 869, 874 (D.C. Cir. 2000) (alteration accepted; emphasis supplied) (quoting *Air Line Pilots Ass'n, Int'l v. Delta Air Lines*, 863 F.2d 87, 94 (D.C. Cir. 1988)).  In other words, DOJ's incorporation by reference of the Moss Affidavit into the Forfeiture Complaint means that the statements in the

affidavit are legally considered to be part of the complaint, as if they were repeated verbatim in that document—or, as plaintiff persuasively argues, DOJ legally "adopted the [Moss Affidavit's] words as its own." Pl.'s Reply at 2. Since the statements confirming that DEA investigated Agbele are therefore part of the complaint filed by DOJ, and DEA "may not claim FOIA exemptions as to . . . records" introduced in court by federal prosecutors, *Knight First Amend. Inst.*, 11 F.4th at 817, DEA may not claim FOIA exemptions as to information revealed by those statements.

Finally, while true that the public disclosures in the Forfeiture Complaint and Moss Affidavit do not specifically reference documents or a case file, the official disclosure of a DEA investigation of Agbele is sufficient to waive DEA's ability to issue a *Glomar* response to the request for DEA's case file on Agbele. In *ACLU/CIA*, which considered the CIA's issuance of a *Glomar* response to a FOIA request seeking documents on the use of drones to carry out targeted killings of individuals, 710 F.3d at 425-26, the D.C. Circuit acknowledged that "neither the President nor any other official has specifically stated that the CIA has *documents* relating to drone strikes, as compared to an *interest* in such strikes," *id.* at 430 (emphasis in original). Still, the Circuit found that those two questions were "not distinct issues," since "[t]he only reason the Agency has given for refusing to disclose whether it has documents is that such disclosure would reveal whether it has an interest in drone strikes; it does not contend that it has a reason for refusing to confirm or deny the existence of documents that is independent from its reason for refusing to confirm or deny its interest in that subject." *Id.* at 430-31.

The same logic applies to the instant case, where the only reason DEA has given for refusing to confirm or deny the existence of documents responsive to plaintiff's FOIA request is that such a disclosure would reveal whether a DEA investigation of Agbele existed. *See* Davis Decl. ¶ 26 (explaining that the *Glomar* response was asserted because, "[g]iven the nature and

context of DEA's criminal law enforcement investigative records, the disclosure of any information could potentially tip-off an individual that they are the subject of a DEA surveillance or investigation, or subject an individual to unwarranted attention for being the subject of an investigation"); *id.* ¶ 27 (claiming that Agbele has "a substantial privacy interest in not being associated with a DEA law enforcement investigation"). Here, however, the fact that Agbele was the subject of a DEA investigation has already been publicly acknowledged by DOJ, as discussed above, meaning that DEA has no remaining "independent . . . reason" for refusing to confirm or deny the existence of the records requested, *ACLU/CIA*, 710 F.3d at 430-31. Put another way, DEA's assertion that the *Glomar* response is necessary to protect from public disclosure whether an investigation of Agbele existed, *see* Davis Decl. ¶¶ 26, 27, "is at this point neither logical nor plausible," *ACLU/CIA*, 710 F.3d at 430, since the existence of a DEA investigation of Agbele has already been publicly acknowledged.

Therefore, DEA's *Glomar* response to plaintiff's December 5, 2023, FOIA request for records relating to Agbele, *see supra* Part I.A.4, must be lifted.

### B.    The FBI and DEA's *Glomar* Responses as to Tinubu

Plaintiff also claims that the Moss Affidavit officially confirms that both the FBI and DEA investigated Tinubu, since the document "repeatedly references Defendant DEA's and Defendant FBI's involvement in the investigation," Pl.'s Mem. at 8, requiring the lifting of these defendants' *Glomar* responses to FOIA requests for FBI and DEA investigative records related to Tinubu, *see supra* Part I.A.1-3. As an additional ground for relief, plaintiff asserts that all three *Glomar* responses are improper because defendants have failed to show that any privacy interest Tinubu may have outweighs the public interest in release of responsive records, Pl.'s Mem. at 11-13; Pl.'s Reply at 3-5. Plaintiff is correct on both claims.

### 1.    DOJ Officially Acknowledged the FBI and DEA's Involvement in Investigations of Tinubu.

Although the Moss Affidavit is less explicit about the criminal investigation of Tinubu, DOJ's public acknowledgment that Tinubu was criminally investigated as part of a broader investigation involving both the FBI and DEA also pierces the FBI and DEA's *Glomar* responses for criminal investigative files as to Tinubu.  *See supra* Part I.A.1-3.  The affidavit "specifically" details why "there is probable cause to believe that funds in certain bank accounts controlled by Bola Tinubu[] were involved in financial transactions in violation of 18 U.S.C. §§1956 and 1957 and represent proceeds of drug trafficking."  Moss Aff. ¶ 2.  The facts and conclusions in the affidavit arose out of a criminal "investigation of money laundering of the proceeds of a heroin distribution organization in the Chicago area," which investigation included "information provided by Special Agents of the IRS, DEA, [and] FBI."  *Id.* ¶ 4.  Throughout the beginning of the affidavit, Moss details the extensive investigatory work of the FBI and DEA in this investigation.  *See id.* ¶¶ 7-18.  The affidavit then explains that Tinubu's "identity" was "disclosed" as a result of "[t]his investigation," *id.* ¶ 21, referencing the overall investigation detailed by Moss, which, again, included the FBI and DEA, and then goes on to provide extensive detail about the information uncovered about Tinubu by the investigation, *see id.* ¶¶ 21-31, 34-48.  Taken together, the information in the affidavit constitutes an official acknowledgment that Tinubu was one subject of a criminal investigation performed by, among other law enforcement agencies, the FBI and DEA—which acknowledgment, as already discussed, was adopted by DOJ through incorporation by reference into the Forfeiture Complaint, *see supra* Part III.A.2.  Since both the FBI and DEA are components of DOJ, *see Component Contact Information*, U.S. Dep't of Justice, https://www.justice.gov/component-contact-information (last updated Aug. 22, 2024); *Marino*, 685 F.3d at 1082, both are bound by this official acknowledgment, *see, e.g.*, *Knight First Amend.*

*Inst.*, 11 F.4th at 816-17; *Marino*, 685 F.3d at 1082, and thus cannot refuse to confirm or deny the mere existence of an investigation of Tinubu.

Defendants resist this conclusion, claiming that treating these disclosures as sufficient to pierce *Glomar* risks a situation where "any joint investigation where one agency makes an official and public disclosure that mentions the assisting agencies would expose all agencies to disclose exempt documents," and this, in turn, would undercut the D.C. Circuit's direction in *Moore* to apply the official acknowledgment test "strictly," 666 F.3d at 1333.  Defs.' Opp'n at 29.  Not so. D.C. Circuit precedent is clear that disclosure by an agency "other than the agency from which the information is being sought" is not deemed official.  *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999) (citations omitted).  Had the IRS, on its own, acknowledged the investigation and named the FBI and DEA as involved, *Moore* would likely apply to support a finding of no official disclosure by the FBI or DEA.  In the instant case, however, the relevant disclosure was not from a different agency, but instead from DOJ, *see supra* Part III.A.2—the agency of which both the FBI and DEA are components.  In that scenario, the D.C. Circuit has been equally clear that public acknowledgment *is* deemed official.  *Knight First Amend. Inst.*, 11 F.4th at 816-17; *Marino*, 685 F.3d at 1082.[8]

As with DEA's *Glomar* response to the request for the case file on Agbele, *see supra* Part III.A.2., both the FBI and DEA argue their *Glomar* responses for records about Tinubu are justified

---

[8]    More generally, defendants overread the relevant D.C. Circuit caselaw on official acknowledgment, which test was developed to protect the Intelligence Community from disclosures by other federal government agencies. In *Frugone*, for instance, the Circuit, "[m]indful that courts have little expertise in either international diplomacy or counterintelligence operations," warned of the "untoward consequences that could ensue" if the CIA were forced to "treat the statements of [a non-intelligence agency] . . . as tantamount to an official statement of the CIA." 169 F.3d at 775.  Indeed, notably, the cases developing the "strict[]" official acknowledgment test overwhelmingly involve the CIA.  *See, e.g.*, *Frugone v. CIA*, 169 F.3d 772; *Wolf v. CIA*, 473 F.3d 370; *Moore v. CIA*, 666 F.3d 1330; *Fitzgibbon v. CIA*, 911 F.2d 755; *Knight First Amend. Inst. v. CIA*, 11 F.4th 810; *Phillippi v. CIA*, 655 F.2d 1325; *Military Audit Proj. v. Casey*, 656 F.2d 724 (D.C. Cir. 1981).  These same risks are not present in the circumstance presented here, where DOJ made the public disclosure about investigative activity of two of the agency's own components.

by the privacy interest in not revealing an individual's association with a law enforcement investigation.  *See* Seidel Decl. ¶ 20 (explaining that the FBI instituted its *Glomar* policy "to protect the privacy rights of individuals, particularly those who appear in FBI law enforcement files," since "[i]t is well-recognized that individuals have substantial privacy interests in relation to being associated with law enforcement investigations"); Davis Decl. ¶ 26 (explaining that the *Glomar* responses were asserted because "the disclosure of any information could potentially tip-off an individual that they are the subject of a DEA surveillance or investigation, or subject an individual to unwarranted attention for being the subject of an investigation"); *id.* ¶ 27 (claiming Tinubu, like Agbele, has "a substantial privacy interest in not being associated with a DEA law enforcement investigation").   Again, however, that Tinubu was a subject of an investigation involving both the FBI and DEA has already been officially acknowledged, meaning that the claim that the *Glomar* responses were necessary to protect this information from public disclosure "is at this point neither logical nor plausible," *ACLU/CIA*, 710 F.3d at 430.  *See supra* Part III.A.2 (explaining this same reasoning).  The FBI and DEA's *Glomar* responses to plaintiff's FOIA requests for information about Tinubu, *see supra* Part I.A.1-3, must therefore be lifted.

### 2.    Defendants Fail to Show the Disclosures Sought from the FBI and DEA are Protected by Exemption 7(C).

Even if DOJ's disclosure did not constitute an official acknowledgment, which it does, the FBI and DEA have failed to meet their burden to show that they properly invoked FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (7)(C), as the rationale for their *Glomar* responses.

Both Exemption 6 and 7(C) protect similar individual privacy interests and contain "comparable language."  *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).  Where, as here, an agency seeks to withhold records "compiled for law enforcement purposes" as implicating personal privacy, only Exemption 7(C) need be considered,

since "all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth*, 642 F.3d at 1173; *see also Kowal v. U.S. Dep't of Justice*, 107 F.4th 1018, 1030 (D.C. Cir. 2024) ("When, as here, the request is for records compiled for law enforcement purposes, the information protected by Exemption 6 is a subset of that protected by Exemption 7(C), so we need only analyze the latter." (citing *Roth*, 642 F.3d at 1173)).[9]

Once the "law enforcement purposes" threshold requirement has been met, the "type of privacy interest at stake" must be balanced against the "public interest in release of the type of information involved" to determine whether any invasion of privacy would be "unwarranted." *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001) (citing *Reps. Comm.*, 489 U.S. 749); *see also ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) ("Determining whether an invasion of privacy is 'unwarranted' within the meaning of Exemption 7(C) requires . . . 'balanc[ing] the public interest in disclosure against the interest [in privacy] Congress intended the Exemption to protect.'" (alterations in original) (quoting *Reps. Comm.*, 489 U.S. at 776)); *Roth*, 642 F.3d at 1174. The claimed privacy interest "belongs to the individual," rather than the government agency invoking the exemption. *Hawkins v. FBI*, No. 20-cv-1483 (BAH), 2022 WL 905577, at *6 (D.D.C. Mar. 2, 2022) (citing *Reps. Comm.*, 489 U.S. at 763–65). The only valid public interest, meanwhile, "is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C.

---

[9]    The parties do not dispute that plaintiff's FOIA requests to the FBI and DEA seek law enforcement investigative records. *See, e.g.*, Pl.'s Mem. at 1 ("Plaintiff seeks disclosure of records pertaining to a joint investigation of the United States Department of Justice . . ., Federal Bureau of Investigation . . ., Drug Enforcement Administration . . ., and Internal Revenue Service . . . that took place in the early 1990s regarding an international drug trafficking and money laundering ring."); Defs.' Opp'n at 2 (arguing that "[t]he FBI and DEA properly asserted *Glomar* responses under FOIA Exemptions 6 and 7(C) because the requests seek criminal investigative documents"); Seidel Decl. ¶ 17 (noting that plaintiff requested "records concerning an alleged 'FBI investigatory file for Bola Ahmed Tinubu' and . . . alleged 'FBI-302 interviews with Bola Tinubu,'" and averring that "the types of records requested, should any exist, would necessarily have been collected and maintained by the FBI as part of its law enforcement function").

Cir. 1992) (internal quotation omitted) (quoting *Reps. Comm.*, 489 U.S. at 773). The party requesting information through FOIA "must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information [sought] is likely to advance that interest.'" *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

Here, defendants fail at the first step of the inquiry: establishing a cognizable privacy interest to support their *Glomar* responses. Defendants are correct that the principle is "well established that 'individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation.'" Defs.' Opp'n at 12 (alteration accepted) (quoting *CREW v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 (D.C. Cir. 2014)). At the same time, when the fact that an individual was a subject of an investigation has already been publicly disclosed, that privacy interest is substantially diminished, *see, e.g.*, *CREW*, 746 F.3d at 1091 ("[A Congressman's] obvious privacy interest in keeping secret the fact that he was the subject of an FBI investigation was diminished by his well-publicized announcement of that very fact." (citing *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998); *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995); *ACLU/CIA*, 710 F.3d at 428-32)), and may no longer support the assertion of a *Glomar* response, since "[a] *Glomar* response . . . is 'permitted only when confirming or denying the existence of records would itself cause harm cognizable under a FOIA exception,'" *id.* (internal quotation marks omitted) (quoting *Roth*, 642 F.3d at 1178).

Defendants' briefing conflates two "distinct privacy interest[s]" that might be at play: (1) Tinubu's interest in "keeping secret the *fact* that he was under investigation," and (2) Tinubu's

"privacy interest in the *contents* of [any] investigative files." *Id.* at 1092 (emphasis in original). To sustain a *Glomar* response, defendants must show that the first privacy interest exists. The affidavits provided by the FBI and DEA, however, do not even acknowledge that the existence of the criminal investigation of Tinubu has already been made public, much less explain why, in light of that reality, a cognizable privacy interest still exists to support the asserted *Glomar* responses. *See generally* Seidel Decl.; Davis Decl. Instead, defendants cite the D.C. Circuit's decision in *SafeCard Services v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991), for the proposition that "release of names and/or other personal information about third parties and their activities could cause unsolicited and unnecessary attention and harassment to be directed toward that person." Defs.' Opp'n at 12. As the Circuit has made clear, however, "[a]lthough *SafeCard* may authorize the redaction of the names and identifying information of private citizens mentioned in law enforcement files," this decision "*does not permit an agency* 'to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address.'" *CREW*, 746 F.3d at 1094 (first emphasis supplied; second emphasis in original) (quoting *Nation Mag.*, 71 F.3d at 896, and citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003); *Mays v. DEA*, 234 F.3d 1324, 1328 (D.C. Cir. 2000)). In other words, while *SafeCard* supports the second privacy interest—protecting the contents of any investigatory records through individual withholdings and redactions—this line of cases provides no support for a categorical treatment of a FOIA request, such as a *Glomar* response.

Since the FBI and DEA have provided no information to establish that a cognizable privacy interest exists in keeping secret the fact that Tinubu was a subject of criminal investigation, they

have failed to meet their burden to sustain their *Glomar* responses, *see supra* Part I.A.1-3, providing an additional reason why these responses must be lifted.

### C.    The CIA's *Glomar* Response as to Tinubu

Finally, plaintiff argues that the CIA has officially acknowledged the existence of records responsive to his FOIA request for records about Tinubu, *see supra* Part I.A.5, since "there are documents posted on the CIA's FOIA Reading Room which clearly address Nigeria's involvement with heroin narcotrafficking during the mid-1980s." Pl.'s Mem. at 11. The publicly available records described by plaintiff, however, fall far short of an official acknowledgment of any responsive records as to Tinubu.

Even plaintiff acknowledges that "Mr. Tinubu's name does not appear directly in these documents." *Id.* Instead, plaintiff claims merely that "it is implausible that no documents responsive to Plaintiff's FOIA request to the CIA exist given that the CIA was closely following the issue and would have at least been aware of Mr. Tinubu once he became a prominent politician in Nigeria." *Id.* These conclusions may seem logical to plaintiff, but "[l]ogical deductions are not . . . official acknowledgments." *Valfells*, 717 F. Supp. 2d at 117. Plaintiff has failed to show that the information requested in his FOIA request either is "as specific as the information previously released," *Mobley*, 806 F.3d at 583, since no information previously released by the CIA mentions or otherwise implicates Tinubu, *see* Pl.'s Mem. at 11, or "match[es] the information previously disclosed," *Mobley*, 806 F.3d at 583. The information previously disclosed by the CIA, plaintiff concedes, merely addresses "Nigeria's involvement with heroin narcotrafficking during the mid-1980s" broadly. Pl.'s Mem. at 11. Given that plaintiff has failed to show that the CIA has ever officially acknowledged the existence or nonexistence of records responsive to his FOIA request, the CIA's *Glomar* response must be sustained.

**IV.    CONCLUSION**

For the reasons discussed above, plaintiff is entitled to summary judgment as to each of the four *Glomar* responses asserted by defendants FBI and DEA, while defendant CIA is entitled to summary judgment, since its *Glomar* response was properly asserted.  Accordingly, the FBI and DEA must search for and process non-exempt records responsive to the FOIA requests directed to these agencies.  *See supra* Part I.A.1-4.  The CIA, meanwhile, is entitled to judgment in its favor in this case.  The remaining parties are directed to file jointly, by May 2, 2025, a report on the status of any outstanding issues in this case, as described in the accompanying order.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  April 8, 2025

_____
**BERYL A. HOWELL**
United States District Judge