**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AARON GREENSPAN,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al*,<br><br>Defendants. | Case No. 1:23-cv-01816-BAH |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

- A. Procedural Background .......... 3
- B. The FOIA Requests and the Court's April 2025 Order .......... 3
- C. Production Under the Order .......... 4
- D. Known Facts About the Subjects of the Investigation .......... 6

III. ARGUMENT .......... 7

- A. Standard of Review .......... 7
- B. The FBI Failed to Conduct an Adequate Search .......... 9
- C. The Court's April 2025 Findings Substantially Govern the Privacy Analysis Now Before the Court .......... 11
- D. Tinubu Lacks a Substantial Privacy Interest in Records Concerning the Investigation, and the Government Cannot Demonstrate Foreseeable Harm From Disclosure .......... 12
  - 1. Public Domain .......... 12
  - 2. Diminished Privacy Interest of Public Officials .......... 14
  - 3. Public Interest Runs Counter To The Government's Conduct .......... 16
  - 4. The Foreseeable-Harm Requirement .......... 16
- E. Exemptions 6 and 7(C) Provide No Protection for Deceased Individuals, and Neither Agency Has Inquired Into Vital Status .......... 17
- F. The DEA's *Vaughn* Index Is Recycled Boilerplate That Withholds 172 of Its 222 Indexed Pages in Full, and It Demonstrates No Segregability .......... 17
- G. The DEA's Exemption 7(D) Confidential-Source Withholdings Fail Under *Landano* .......... 19
- H. The Exemption (b)(3) Withholdings Lack the Document-Specific Justification *King* Requires .......... 20
  - 1. Rule 6(e) .......... 20
  - 2. Title III and the Pen Register Act .......... 21
  - 3. The National Security Act, 50 U.S.C. § 3024(i)(1) .......... 21
- I. The Court Should Address Potential Sealed Criminal Charges Against Tinubu and Agbele, Which No Longer Justify Secrecy .......... 21

IV. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

## Cases

*ACLU v. U.S. Department of Justice*,
655 F.3d 1, 7 (D.C. Cir. 2011) .......... 15

*Am. Civil Liberties Union v. Cent. Intelligence Agency*,
710 F.3d 422, 433 (D.C. Cir. 2013) .......... 8

*Associated Press v. U.S. Department of Def.*,
554 F.3d 274, 283 (2d Cir. 2009) .......... 7

*Blackwell v. FBI*,
646 F.3d 37, 42 (D.C. Cir. 2011) .......... 19

*Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*,
601 F.3d 143, 147 (2d Cir. 2010) .......... 7

*Brayton v. Office of U.S. Trade Representative*,
641 F.3d 521, 527 (D.C. Cir. 2011) .......... 8

*Campbell v. U.S. Department of Justice*,
164 F.3d 20, 28 (D.C. Cir. 1998) .......... 10

*Carney v. U.S. Dep't of Justice*,
19 F.3d 807, 812 (2d Cir. 1994) .......... 7

*Cottone v. Reno*,
193 F.3d 550, 554 (D.C. Cir. 1999) .......... 14

*CREW v. Department of Justice*,
840 F. Supp. 2d 226, 233 (D.D.C. 2012) .......... 12, 13

*CREW v. U.S. Department of Justice*,
746 F.3d 1082 (D.C. Cir. 2014) .......... 14

*Davis v. U.S. Department of Justice*,
968 F.2d 1276, 1279-1280 (D.C. Cir. 1992) .......... 14

*Hayden v. Nat'l Sec. Agency*,
608 F.2d 1381, 1387 (D.C. Cir. 1979) .......... 8

*Iturralde v. Comptroller of Currency*,
315 F. 3d 311, 313 (D.C. Cir. 2003) .......... 7

*Jigsaw Productions, Inc. v. SEC*,
Case No. 1:24-cv-2358-TSC, slip op. (D.D.C. Mar. 23, 2026) .......... 15

*Kimberlin v. Quinlan*,
199 F.3d 496, 500 (D.C. Cir. 1999) .......... 12

*King v. U.S. Department of Justice*,
830 F.2d 210 (D.C. Cir. 1987) .......... passim

*Larson v. Dep't of State*,
565 F.3d 857, 862 (D.C. Cir. 2009) .......... 8

*LaShawn A. v. Barry*,
87 F.3d 1389, 1393 (D.C.Cir. 1996) .......... 12

*Leopold v. Department of Justice*,
94 F.4th 33, 37 (D.C. Cir. 2024) .......... 9, 16

*Marino v. DEA*,
685 F.3d 1076, 1080 (D.C. Cir. 2012) .......... 12

*Memphis Publishing Company v. Federal Bureau of Investigation*,
Case No. 1:10-cv-01878-ABJ at 16 (D.D.C. January 31, 2012) .......... 13

*Miller v. Casey*,
730 F.2d 773, 776 (D.C. Cir. 1984) .......... 8

*Milner v. Department of the Navy*,
562 U.S. 562, 565 (2011) .......... 8

*Morgan v. U.S. Department of Justice*,
923 F.2d 195, 197-98 (D.C. Cir. 1991) .......... 22

*Morley v. CIA*,
508 F.3d 1108, 1122 (D.C. Cir. 2007) .......... 10

*Nation Magazine v. U.S. Customs Serv.*,
71 F.3d 885, 890 (D.C. Cir. 1995) .......... 11, 15

*National Archives & Records Administration v. Favish*,
541 U.S. 157, 168-171 (2004) .......... 17

*New York Times Co. v. U.S. Dep't of Justice*,
756 F.3d 100, 122 (2d Cir. 2014) .......... 8

*Nixon v. Warner Communications, Inc.*,
435 U.S. 589, 597-99 (1978) .......... 22

*Oglesby v. U.S. Department of Army*,
920 F.2d 57, 68 (D.C. Cir. 1990) .......... 9, 10

*Perry v. Block*,
684 F.2d 121, 127 (D.C. Cir. 1982) .......... 9

*Phillippi v. CIA*,
546 F.2d 1009 (D.C. Cir. 1976) .......... 4

*Press-Enterprise Co. v. Superior Court*,
478 U.S. 1, 8-10 (1986) .......... 22

*Reporters Comm. for Freedom of the Press v. FBI*,
3 F.4th 350, 369 (D.C. Cir. 2021) .......... 9, 10, 16, 17

*Schrecker v. U.S. Department of Justice*,
349 F.3d 657, 661 (D.C. Cir. 2003) .......... 17, 23

*Senate of Puerto Rico v. U.S. Department of Justice*,
823 F.2d 574, 582–84 (D.C. Cir. 1987) .......... 20

*Stern v. FBI*,
737 F.2d 84, 92-94 (D.C. Cir. 1984) .......... 15

*Stolt-Nielsen Transp. Grp. Ltd. v. United States*,
534 F.3d 728, 734 (D.C. Cir. 2008) .......... 18

*Students Against Genocide v. Dep't of State*,
257 F.3d 828, 833 (D.C. Cir. 2001) .......... 8

*Sussman v. U.S. Marshals Service*,
494 F.3d 1106, 1112 (D.C. Cir. 2007) .......... 9, 18

*U.S. Department of Justice v. Landano*,
508 U.S. 165 (1993) .......... 2, 19, 20, 23

*U.S. Department of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749, 773 (1989) .......... 16

*United States v. Edwards*,
Case No. 2:92-cr-00113-RL (N.D. Indiana *filed* August 20, 1992) .......... 7, 14, 15, 21

*United States v. Hubbard*,
650 F.2d 293, 317-22 (D.C. Cir. 1980) .......... 22

*USA v. Acct 263226700, et al*,
Case No. 1:93-cv-04483 (N.D. Illinois *filed* July 28, 1993) .......... 1

*Washington Post v. Robinson*,
935 F.2d 282, 287-89 (D.C. Cir. 1991) .......... 22

*Watkins L. & Advoc., PLLC v. U.S. Department of Justice*,
78 F.4th 436, 450 (D.C. Cir. 2023) .......... 8

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
810 F.2d 243, 250 (D.C.Cir. 1987) .......... 12

**Statutes**

5 U.S.C. § 552(a)(4)(E) .......... 23

5 U.S.C. § 552(a)(6)(A)(i) .......... 1

5 U.S.C. § 552(a)(8)(A)(i)(I) .......... 23

5 U.S.C. § 552(a)(8)(A)(ii)(II) .......... 8

5 U.S.C. § 552(b)(3) .......... 2, 20, 21, 23

5 U.S.C. § 552(b)(6) .......... 3, 19, 20

5 U.S.C. § 552(b)(7)(A) .......... 2

5 U.S.C. § 552(b)(7)(C) .......... 3, 20

5 U.S.C. § 552(b)(7)(D) .......... 2, 19, 20

5 U.S.C. § 552(b)(7)(E) ... 19

5 U.S.C. § 552(b)(7)(F) ... 19

18 U.S.C. § 3123(d) ... 2, 20

18 U.S.C. §§ 2510-20 ... 2, 20, 21

50 U.S.C. § 3024(i)(1) ... 2, 20, 21

**Rules**

Federal Rule of Civil Procedure 15(a)(1)(B) ... 3

Federal Rule of Civil Procedure 15(a)(2) ... 3

Federal Rule of Civil Procedure 56(c) ... 1

Federal Rule of Criminal Procedure 6(e) ... 2, 20, 23

Pursuant to Federal Rule of Civil Procedure 56(c), Plaintiff Aaron Greenspan again respectfully moves this Court for summary judgment against remaining Defendants FBI and DEA. Production under the Court's April 8, 2025 Order at ECF No. 47 is purportedly "complete." ECF No. 65-3 at 4; ECF No. 76 at 2. The remaining disputes are legal questions ripe for adjudication on the existing record.

## I. INTRODUCTION

This case, about a process that is supposed to take twenty business days according to 5 U.S.C. § 552(a)(6)(A)(i), has consumed four years so far. Plaintiff submitted his first FOIA request in question to the FBI in 2022, seeking records about an inter-agency federal investigation of a Chicago-based money-laundering and heroin-trafficking operation that the United States Department of Justice ("USDOJ") publicly described in a 1993 federal civil forfeiture complaint, *USA v. Acct 263226700, et al*, Case No. 1:93-cv-04483 (N.D. Illinois *filed* July 28, 1993). Among the named participants in that USDOJ filing was one Bola Ahmed Tinubu, now widely regarded as President of the Federal Republic of Nigeria, having won a controversial election that was reported to be neither free nor fair.

Across the interim productions made in the fourteen-month timespan since this Court's April 2025 Order, Defendants have produced a total of zero (0) pages containing the unredacted word "Tinubu," wasting Plaintiff's and the Court's time. They have done so only after the FBI purportedly took four years to digitize a single ~48,000-page investigative file which it then supposedly narrowed through an undisclosed keyword search on computer hardware the FBI has chosen not to describe using software that is unknown. For its part, the DEA has withheld the bulk of its responsive material under a *Vaughn* index that repeats the same types of one-paragraph justifications verbatim, including the same typographical errors, more than two hundred times.

Five legal questions are now ripe.

*First*, whether the FBI conducted an adequate search when its own declaration shows that it located a ~48,000-page multi-subject file, "scoped" that file using an unspecified "text search,"

never disclosed the search terms it used, and has never confirmed that it identified or searched within the specific sub-file Plaintiff requested by case number: FBI Case File No. 245-IP-71386-UUUUUU.

*Second*, whether the remaining Defendants' Exemption 6 and 7(C) withholdings can be sustained when (a) this Court has already held that the privacy interests at stake do not outweigh the public interest in a *Glomar* context, which is no different than the current context; (b) the public-domain doctrine eliminates the substantial privacy interest where the underlying facts have been described in USDOJ filings for more than thirty years; (c) many principal subjects of and likely additional persons involved in the investigation are deceased; (d) the main surviving subject is regarded by the federal government to be a sitting head of state; and (e) the foreseeable-harm requirement of the FOIA Improvement Act of 2016 forecloses generic, categorical justifications of the type provided here.

*Third*, whether the DEA's Exemption 7(D) confidential-source withholdings can stand when its *Vaughn* index asserts source confidentiality categorically, in violation of *U.S. Department of Justice v. Landano*, 508 U.S. 165 (1993), which forbids any presumption of confidentiality and requires a source-by-source showing.

*Fourth*, whether the agencies' withholdings under Exemption (b)(3), asserted through Federal Rule of Criminal Procedure 6(e), Title III of the Omnibus Crime Control and Safe Streets Act (18 U.S.C. §§ 2510-20), the Pen Register Act (18 U.S.C. § 3123(d)), and the National Security Act (50 U.S.C. § 3024(i)(1)), satisfy the document-specific justification standard required by *King v. U.S. Department of Justice*, 830 F.2d 210 (D.C. Cir. 1987), or instead rest on checkbox "standard responses."

*Fifth*, whether Exemption (b)(7)(A), involving the potential of disclosures "interfering with enforcement proceedings," can be invoked to withhold documents about criminal proceedings that have been closed for roughly thirty years.

Plaintiff respectfully submits that, on the existing record, the answer to each question favors immediate disclosure.

# II. BACKGROUND

## A. Procedural Background

This action was filed on June 12, 2023. ECF No. 1. A First Amended Complaint was filed on August 28, 2023 pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(1)(B). ECF No. 8. A Second Amended Complaint was filed on March 24, 2024 pursuant to Rule 15(a)(2) with the consent of Defendants. ECF No. 35.

On July 11, 2024, Plaintiff narrowed all outstanding FOIA requests to only those documents that had already been analyzed for production and/or already produced. Defendants complied with the request to narrow, and on August 13, 2024, Plaintiff voluntarily dismissed Defendants Executive Office for United States Attorneys ("EOUSA"), Internal Revenue Service ("IRS") and United States Department of State ("State") from the action. ECF No. 40. This left three defendants remaining: FBI, DEA, and CIA. On the prior round of summary judgment, this Court granted Plaintiff's challenge as to Defendants FBI and DEA's *Glomar* responses, and denied Plaintiff's challenge as to Defendant CIA. ECF No. 47.

## B. The FOIA Requests and the Court's April 2025 Order

In 2022 and 2023, Plaintiff submitted several FOIA requests that are still at issue.

| No. | Request Date / Request No. | Request Subject | Agency | Denial Rationale | SAC Count |
|---|---|---|---|---|---|
| 1. | July 16, 2022<br>1553430-000 | Lee Andrew Edwards | FBI | Wait until "January 2026" | III |
| 2. | July 21, 2022<br>22-00892-F | Bola Ahmed Tinubu / Lee Andrew Edwards | DEA | *Glomar*: Ex. (b)(6) and (b)(7)(C) | IX |
| 3. | March 23, 2023<br>1587654-000 | Mueez Adegboyega Akande | FBI | None | IV |
| 4. | March 23, 2023<br>23-00475-F | Mueez Adegboyega Akande | DEA | Purportedly invalid: "overly broad," etc. | X |
| 5. | March 29, 2023<br>1588244-000 | Bola Ahmed Tinubu Case File | FBI | *Glomar*: Ex. (b)(6) and (b)(7)(C) | V |
| 6. | May 23, 2023<br>1593615-000: | Bola Ahmed Tinubu Interview 302s | FBI | *Glomar*: Ex. (b)(6) and (b)(7)(C) | VI |
| 7. | December 5, 2023<br>24-00201-F | Abiodun Agbele | DEA | *Glomar*: Ex. (b)(6) and (b)(7)(C) | XI |

FBI Request No. 1588244-000 sought Tinubu's complete FBI file. FBI Request No. 1593615-000 specifically sought FBI 302 interviews from FBI Case No. 245-IP-71386-UUUUUU during 1992-1993. DEA Request No. 22-00892-F sought records concerning the Nigerian heroin distribution organization investigated from DEA's Hammond, Indiana office. DEA Request No. 24-00201-F sought the DEA case file for Abiodun Agbele.

Numerous agencies issued *Glomar* responses neither confirming nor denying the existence of records. *See Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976). On April 8, 2025, this Court granted summary judgment for Plaintiff on the FBI and DEA *Glomar* issues, ECF No. 48, holding that (1) USDOJ's incorporation by reference of IRS Special Agent Kevin Moss's affidavit into the 1993 civil forfeiture complaint constituted an official acknowledgment of the investigation, *Id*. at 12 ("While the FBI's FOIA production does not result in an official confirmation sufficient to lift DEA's *Glomar* response, publicly filed court records do."); (2) FBI productions in this very litigation acknowledged Agbele's involvement, *Id*. at 12 ("Both parties agree that Agbele's name appeared in documents produced to plaintiff by the FBI on June 10, 2024."); and (3) Defendants "failed to show that any privacy interest Tinubu may have outweighs the public interest in release of responsive records," *Id*. at 18. The Court ordered production of non-exempt records but neglected to specify a timeframe. ECF No. 47. The Court later clarified in its October 15, 2025 Minute Order that its Order at ECF No. 47 was "limited to the appropriateness of the agencies' blanket *Glomar* responses," thus allowing Defendants to continue redacting every instance of Tinubu's and every other instance of Agbele's name from production documents.

### C. Production Under the Order

The FBI's most recent declaration, ECF No. 65-3, describes how it purportedly processed Plaintiff's requests. According to the Declaration of Shannon R. Hammer, the FBI's search of its Central Records System located "a voluminous multi-subject file that, due to its age, was not in a text searchable format and required digitization" of "approximately 48,000 pages." This

digitization task took the FBI roughly three months.[1] ECF No. 65-3 at 3. "Next, once the file was digitized, the FBI scoped the digitized file using a text search to locate any potentially responsive records." *Id.* The declaration does not identify the search terms used, does not state whether the requested sub-file (Case No. 245-IP-71386-UUUUUU) was located within the multi-subject file, and does not describe how Form 302 interviews responsive to FOIA Request No. 1593615-000 were identified within the file. The FBI's release cover letters confirm only that the FBI "conducted a main entity record search of the Central Records System (CRS) per our standard search policy."

Of course, this is not true. During the period when this work was being completed, the FBI is reported to have diverted hundreds of staff members to redact the Epstein Files. And while this litigation was pending, the former Director of the FBI, Christopher Wray, flew to Nigeria to meet with Mr. Tinubu, and then posted photographs of their meeting on the FBI website. Given that an FBI Director has never flown to Nigeria to meet with *anyone* before, the handling of the documents requested as part of this lawsuit seems rather far afield from "standard…policy."

The FBI's cover letters further state that the production comes "from a multiple subject investigation," that "[t]he only portions processed were those documents that contained information concerning your subject," even given that Plaintiff's requests involved more than one subject, and that "[d]ocuments were not considered for processing if no information about your subject was in the body of the document."

The FBI made a series of interim releases drawn from its 48,000-page file which somehow did not overlap at all with the hundreds, if not thousands, of pages of documents that

[1] Optical Character Recognition (OCR) of 48,000 pages is not, standing alone, a months-long undertaking; commodity hardware and software routinely process documents at roughly one page per second, which would render an entire file of this size text-searchable in approximately one day. To the extent Defendant FBI means that digitization, review, exemption analysis, and redaction together consumed a three-month period, its declaration does not say so or break out the time attributable to OCR alone. The agency bears the burden of explaining its timeline, yet no declaration supplied by Defendants does.

Plaintiff obtained at the National Archives in Chicago about its exact same investigation. Of the pages purportedly reviewed under the Tinubu-specific requests, roughly half were released with redactions covering any and all references to Mr. Tinubu himself. For its part, Defendant DEA produced 62 of 252 responsive pages (at first, 50 out of 238, and then 12 out of 14), withholding 190, including pages withheld in full. ECF No. 64; ECF No. 76. Confusingly, Defendant FBI's April 13, 2026 "production" consisted of two worthless pages: a single DEA fax cover sheet, transmitted twice, with no accompanying fax.

Most remarkable of all, several of the documents Defendants produced in their final interim releases on May 28, 2026 and June 1, 2026 were redacted copies of the Moss Affidavit itself, in various versions. That affidavit has been a public court filing since 1993; Plaintiff has possessed it in complete, unredacted form throughout this litigation; and this Court has already held that it constitutes the USDOJ's official acknowledgment of the investigation. ECF No. 48 at 12-18. Defendants nonetheless redacted it—including redactions of all mentions of Mr. Tinubu's name and his relatives' names—before producing it as though it contained something sensitive, dragging out production through June 2026 in a lawsuit filed in large part due to Defendant FBI's written threat of March 22, ***2023*** to merely drag out production only through "January 2026." Second Amended Complaint ¶ 47.

Defendant DEA filed a *Vaughn* index on February 13, 2026. ECF No. 65-2 (Exhibit B). As discussed in Part III.F below, that index withholds 172 of the indexed pages in full and supports every entry with the same type of recycled boilerplate. The FBI has filed no *Vaughn* index for its withholdings at all; it has identified exemptions only by checking boxes on its release letters next to statutory codes, without any document-specific justification.

### D. Known Facts About the Subjects of the Investigation

Both Lee Andrew Edwards and Mueez Adegboyega Akande are deceased. Bola Tinubu is alive and regarded by the federal government as the sitting President of the Federal Republic of Nigeria. Mr. Tinubu previously served as Governor of Lagos State in Nigeria from 1999-2007. In *United States v. Edwards*, Case No. 2:92-cr-00113-RL (N.D. Indiana *filed* August 20,

1992), a public criminal prosecution whose trial transcripts are part of the public record, former DEA Special Agent Vincent Balbo testified in open court that he assisted in the criminal indictment of Abiodun Agbele, although no such criminal case appears on PACER, suggesting that it was and is under seal. Trial transcripts in the same proceeding identified Former FBI Special Agents Karen and Robert Pertuso as agents involved in the investigation. Later reporting identified concerns about potential corruption involving the husband-and-wife Special Agent pair. *See The Washington Post*, "Detroit FBI Chief Cleared In Drug Ring Leak Probe" by Robert E. Pierre and Allan Lengel, February 5, 2004, https://www.washingtonpost.com/archive/politics/2004/02/06/detroit-fbi-chief-cleared-in-drug-ring-leak-probe/d9f98bc3-20b1-4cb7-a46a-42350890bd70/. The investigative documents catalogued in the DEA's *Vaughn* index bear dates ranging from 1990 to 1994. ECF No. 65-2. No agency has represented in any filing that it has investigated the current vital status of any individual referenced in withheld records before invoking privacy exemptions despite Plaintiff raising this issue repeatedly.

## III. ARGUMENT

### A. Standard of Review

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). Under FOIA, "At the summary judgment stage, the agency has the burden of showing that it complied with the FOIA…" *Iturralde v. Comptroller of Currency*, 315 F. 3d 311, 313 (D.C. Cir. 2003). *See also Carney v. U.S. Department of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); 5 U.S.C. § 552(a)(4)(B). FOIA exemptions are to be construed narrowly, "resolving all doubts in favor of disclosure." *Associated Press v. U.S. Department of Def.*, 554 F.3d 274, 283 (2d Cir. 2009). Courts review the legality of any withholdings de novo. *Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

An agency is entitled to summary judgment only "if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced

... or is wholly exempt from the Act's inspection requirements.'" *Students Against Genocide v. Department of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted). The agency must provide an explanation for its exemptions that is "full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King*, 830 F.2d at 218. An affidavit must at a minimum describe the justifications for withholding information with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and must not be contradicted by contrary evidence in the record or by evidence of the agency's bad faith. *See Larson v. Department of State*, 565 F.3d 857, 862 (D.C. Cir. 2009), quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984). "[A]ffidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

An agency may not seek to withhold all information even as to the volume and description of responsive records, but even if it could, it would only be able to do so in "unusual circumstances" if supported by a "particularly persuasive affidavit." *New York Times Co. v. U.S. Department of Justice*, 756 F.3d 100, 122 (2d Cir. 2014) quoting *Am. Civil Liberties Union v. Cent. Intelligence Agency*, 710 F.3d 422, 433 (D.C. Cir. 2013). An agency cannot treat each record and any information about the record as an indivisible whole; even if parts of a record, or information regarding some responsive records, are exempt, an agency has an obligation under FOIA to "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II).

Although there are rare exceptions when facts cannot be agreed upon, summary judgment is the standard vehicle for FOIA adjudication. *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency bears the burden of justifying each withholding. *Watkins L. & Advoc., PLLC v. U.S. Department of Justice*, 78 F.4th 436, 450 (D.C. Cir. 2023). Exemptions are narrowly construed. *Milner v. Department of the Navy*, 562 U.S. 562, 565 (2011).

Three requirements bear special emphasis at this stage. First, an agency must demonstrate that it conducted "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," and its supporting declarations must describe the search "in reasonable detail," including the search terms and the type of search performed. *Oglesby v. U.S. Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Second, the foreseeable-harm requirement of the FOIA Improvement Act of 2016, 5 U.S.C. § 552(a)(8)(A)(i), "impose[s] an independent and meaningful burden on agencies" beyond merely identifying an applicable exemption. *Leopold v. Department of Justice*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021)). The agency must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede" a protected interest. *Reporters Comm.*, 3 F.4th at 370. Generic, categorical, or abstract assertions of harm are insufficient. *Id.* at 369-370.

Third, an agency must release "any reasonably segregable" non-exempt portion of any record. *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1112 (D.C. Cir. 2007). Withholding a record in full requires an affirmative showing that no segregable non-exempt material exists. *Id.* at 1116.

**B. The FBI Failed to Conduct an Adequate Search**

The FBI's own declaration establishes the inadequacy of its search. The Hammer Declaration explains that the FBI located "a voluminous multi-subject file" of "approximately 48,000 pages," digitized it, and then "scoped the digitized file using a text search to locate any potentially responsive records." ECF No. 65-3 at 3-4. Three independent defects arise from that account, each of which precludes summary judgment for the FBI on search adequacy and warrants a supplemental declaration.

*First*, the FBI has not disclosed its search terms. An agency's declaration must describe its search "in reasonable detail," identifying the search terms and methodology so that the court

and the requester can assess whether the search was reasonably calculated to uncover responsive records. *Oglesby*, 920 F.2d at 68; *see also Reporters Comm.*, 3 F.4th at 371 (declaration must permit meaningful review). The phrase "scoped the digitized file using a text search" discloses nothing about *which* terms were run against a 48,000-page file. Without the terms, neither this Court nor Plaintiff can determine whether the search captured the records Plaintiff requested, and the FBI cannot carry its burden. *See Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (conclusory description of search methodology insufficient).

*Second*, a keyword search of a 48,000-page file structurally fails to capture Plaintiff's specific case file request. Request No. 1593615-000 did not seek records merely mentioning Tinubu; it sought the FBI Form 302 interview records contained in a specific investigative file, Case No. 245-IP-71386-UUUUUU, during a specific period. A Form 302 interview record that is part of that case file, but that refers to Tinubu by an alias, a code name, or not by name at all in the body text, would potentially be invisible to a literal "text search" keyed to a subject's name. This is especially relevant given that there are open questions about whether "Bola Tinubu" is really Mr. Tinubu's name at all, which is precisely why Plaintiff identified the file (and sub-file) by its case number.

Where a requester identifies a specific, known file, the agency cannot satisfy its obligation without searching that file or explaining why it did not. *Campbell v. U.S. Department of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (search inadequate where agency "never explained" why it failed to search files the requester specifically identified). The Hammer Declaration never states that the requested sub-file was located within the multi-subject file, never states that it was searched, and never denies that it exists.[2]

*Third*, the FBI's self-imposed "concerning your subject" filter compounds the problem. The FBI's release letters state that the records come "from a multiple subject investigation," that "[t]he only portions processed were those documents that contained information concerning your

[2] Although the "UUUUUU" sub-file designation does appear in a few produced pages without reference to anything in particular, that is not enough to make clear that the file was actually searched.

subject," and that "[d]ocuments were not considered for processing if no information about your subject was in the body of the document." Layering that content filter on top of an undisclosed keyword scope means the FBI twice narrowed a 48,000-page file by criteria it has never disclosed or justified. An agency may not unilaterally constrict the scope of a request in a manner that defeats it. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). Moreover, as mentioned above, it is not clear which "subject" is being referred to given that different FOIA requests at issue here involved different subjects.

At minimum, this Court should order the FBI to provide a supplemental declaration stating (a) the exact search terms, aliases and procedures used to scope and/or narrow the 48,000-page file; (b) whether sub-file 245-IP-71386-UUUUUU was identified within that file, searched, and what responsive records were located; and (c) whether and how the FBI located Form 302 interview records responsive to FOIA Request No. 1593615-000.

### C. The Court's April 2025 Findings Substantially Govern the Privacy Analysis Now Before the Court

Plaintiff acknowledges that this Court's April 8, 2025 holding addressed Defendants' *Glomar* responses—whether Defendants could refuse to confirm or deny the existence of responsive records at all—and did not conduct document-by-document review of specific withholdings, because no documents had yet been produced. To that limited extent, individualized 7(C) analysis remains available for documents that reveal genuinely new information beyond what was officially acknowledged.

But the Court's underlying findings about the privacy and public interests at stake are not so limited. The Court found that DOJ's 1993 civil forfeiture filing constituted an official acknowledgment that placed the fact of the investigation in the public domain. ECF No. 48 at 12-24. It found the public interest in disclosure of records concerning the investigation to be substantial. *Id.* at 17-18. And it expressly found that "defendants failed to show that any privacy interest Tinubu may have outweighs the public interest in release of responsive records." *Id.* at 18. Those findings concern the relative weight of privacy and public interests in this case, on a record that has not materially changed.

Under the law-of-the-case doctrine, a court's findings in earlier stages of a case ordinarily control later stages.

> "The law-of-the-case doctrine rests on a simple premise: 'the *same* issue presented a second time in the same case in the same court should lead to the *same result*.' *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C.Cir. 1996) (en banc). Accordingly, a 'legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.' *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir. 1987)" (emphasis in original).

*Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999). Defendants may attempt to identify specific documents whose contents reveal categories of information not encompassed by the prior analysis; for example, sensitive personal information about previously unidentified third parties. But for documents whose only privacy claim runs to Tinubu, Edwards, Akande, or Agbele on conduct already described in USDOJ's public filings, the Court has already struck the balance.

### D. Tinubu Lacks a Substantial Privacy Interest in Records Concerning the Investigation, and the Government Cannot Demonstrate Foreseeable Harm From Disclosure

Independent of the law-of-the-case effect, Defendants cannot establish that Tinubu has a substantial privacy interest under four converging lines of analysis.

#### 1. Public Domain

Under the public domain doctrine, "[o]ne can have no privacy interest in information that is already in the public domain." *CREW v. Department of Justice*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012); *see also Marino v. DEA*, 685 F.3d 1076, 1080 (D.C. Cir. 2012). The fact and general nature of the investigation have been public since 1993. The Moss Affidavit, sworn by IRS special agent Kevin Moss and incorporated by reference into USDOJ's 1993 civil forfeiture complaint, describes Bola Tinubu's role in the money-laundering operation and identifies him as having committed at least six federal crimes. This Court has already held that the Affidavit constitutes official acknowledgment by USDOJ. ECF No. 48 at 12-24. The 1993 forfeiture

action was, moreover, litigated publicly against named Claimants who included "K.O. Tinubu," identified in an October 4, 1993 Order as part of "the Tinubu Family," and Alhaji[3] Mogaji, widely reported to be Mr. Tinubu's mother. Having publicly asserted ownership of the seized funds in a public judicial proceeding, those individuals' identities and their connection to the investigation were placed squarely in the public record, which independently forecloses any fallback assertion of third-party privacy on their behalf. And because so much is already public, the FBI in particular may not invoke privacy to withhold what the public already knows. *See Memphis Publishing Company v. Federal Bureau of Investigation*, Case No. 1:10-cv-01878-ABJ at 16 (D.D.C. January 31, 2012).

Defendants will likely argue that the Moss Affidavit does not place every detail of every Form 302 interview record or DEA report into the public domain. That argument has force as to the residual, document-specific analysis but does not defeat the threshold inquiry. The public-domain doctrine eliminates Tinubu's substantial privacy interest in the fact and general subject matter of the investigation, in his identification as a participant, and in the basic outlines of the alleged conduct. "[W]hen the fact of an investigation is already a matter of public record, the target's privacy interest in that information has far less force." *CREW*, 840 F. Supp. 2d at 233. Whatever document-specific interest may remain in particular passages, the categorical claim Defendants assert as to entire documents and entire categories of withholdings cannot survive.

The clearest proof that Defendants' withholdings are untethered from any genuine privacy interest is that their own final productions *attempted to redact the Moss Affidavit*: the very document, public for more than thirty years and held by this Court to be USDOJ's official acknowledgment, that Plaintiff already possesses in full. An agency can have no cognizable privacy interest, and can demonstrate no foreseeable harm, in redacting a document that has been a public court record for three decades. That Defendants redacted it anyway to fully erase Tinubu's name from each and every production document shows that their redactions reflect not

[3] *See* Wikipedia Article for "Abibatu Mogaji," https://en.wikipedia.org/wiki/Abibatu_Mogaji; "Alhaji" is a Nigerian honorific usually reserved for men, but here applied to a prominent woman.

any individualized harm analysis but a categorical policy of refusing to divulge Tinubu's name even where it is indisputably public. That is the antithesis of the particularized showing FOIA requires, and it is evidence of the kind of bad faith that strips an agency's declarations of the presumption of good faith they would otherwise enjoy.

The public-domain doctrine reaches further still by virtue of the parallel criminal prosecution(s). Information that has been disclosed in open court is, by definition, no longer private, and an agency may not withhold material that has "already [been] placed in the public domain." *Davis v. U.S. Department of Justice*, 968 F.2d 1276, 1279-1280 (D.C. Cir. 1992); *see also Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (FBI could not withhold audio recordings that had been "played in open court" during a public criminal trial). The investigation at issue was the basis for the public prosecution in *United States v. Edwards*, *supra*. Former DEA Special Agent Vincent Balbo testified in that proceeding, and the trial transcripts identify Balbo as well as the FBI agents involved. Other agents' names and signatures pepper the public documents in the National Archives tied to that case. To the extent the withheld Form 302s, surveillance reports, and agent identities correspond to testimony, exhibits, or recordings introduced in or discussed at that public trial, they fall squarely within *Cottone* and *Davis* and cannot be withheld on privacy grounds.

### 2. Diminished Privacy Interest of Public Officials

Public officials have substantially-reduced privacy interests in records pertaining to their public roles and conduct. The controlling precedent is *CREW v. U.S. Department of Justice*, 746 F.3d 1082 (D.C. Cir. 2014), which concerned USDOJ records about its investigation of former House Majority Leader Tom DeLay and its decision not to prosecute him. The D.C. Circuit recognized that the public interest in those records was substantial and that DeLay's privacy interest was diminished both because he was a public official and because the matter had been publicly aired. *Id.* at 1091-93. Tinubu stands in the identical posture: he was named in a public USDOJ filing, investigated, and never publicly charged, or more likely, charged under seal with the seal never lifted. The D.C. Circuit has likewise held that the public interest in identifying a

government actor who engaged in wrongdoing in an official capacity outweighs that actor's privacy, and that seniority cuts *against* privacy—the more senior the official, the weaker the privacy claim. "The excuse that the SAC was merely following orders should not prevent the public from being informed that a specific 'senior bureau official' followed a deliberately-chosen course when placed, perhaps, between a hard rock and his conscience. One basic general assumption of the FOIA is that, in many important public matters, it is for the public to know and then to judge." *Stern v. FBI*, 737 F.2d 84, 92-94 (D.C. Cir. 1984). Tinubu is the sitting head of state of a nation of more than 220 million people and was, during the period of public discussion of these allegations, a candidate for and Governor of Lagos State. His fitness for those offices as a potential agent of the United States Government and the wide-ranging impact of those offices on Nigerians in the United States and Nigerian-Americans is precisely what records about the FBI and DEA investigation bear upon.

The privacy interest is further diminished because the conduct at issue was tied up in public criminal proceedings. Individuals who were defendants in public criminal proceedings retain only a markedly reduced privacy interest in information about those proceedings. *ACLU v. U.S. Department of Justice*, 655 F.3d 1, 7 (D.C. Cir. 2011). The investigation here culminated in the public prosecution in *United States v. Edwards*, and Agbele's now-nowhere-to-be-found indictment was described in open court. *See Nation Magazine*, 71 F.3d at 894-96 (a public figure's privacy interest in his interactions with the government on matters of public concern is limited).

This Court's decision in *Jigsaw Productions, Inc. v. SEC*, Case No. 1:24-cv-02358-TSC, slip op. (D.D.C. Mar. 23, 2026), illustrates the principle as applied to a prominent public figure. There, the court held that the SEC could not invoke Exemptions 6 and 7(C) to withhold a video recording of Elon Musk's interview with SEC investigators. The court found that Musk, "a world-famous public figure whose voice, likeness, and mannerisms are widely publicized" had no substantial privacy interest because the underlying enforcement action was public, the transcript had been released, and "the typical reasons for withholding law enforcement records—

such as the stigma associated with law enforcement investigations—do not hold weight. The cat is out of the bag." *Id.* at 7. Plaintiff acknowledges that *Jigsaw* turned in part on the SEC's prior release of the interview transcript. Here, while the underlying 302s and DEA reports have not been released, the Moss Affidavit serves the parallel function: it is the publicly filed, USDOJ-adopted document that places the substantive conduct in the public record. As in *Jigsaw*, the question is not whether some marginal interest may attach to particular details, but whether Defendants have identified a *substantial* privacy interest justifying withholding entire records. They have not.

**3. Public Interest Runs Counter To The Government's Conduct**

The relevant public interest under Exemption 7(C) is whether disclosure would "shed[] light on an agency's performance of its statutory duties." *U.S. Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). That interest is acute here and is not limited to Tinubu personally. The records bear directly on what the FBI and DEA investigated, what they found, who they arrested and charged, and how the federal government handled the matter of an individual whom the IRS, and in turn via reference, USDOJ publicly accused of six federal crimes in 1993 and who is now a foreign head of state. The public has a substantial interest in understanding the government's investigative conduct and disposition decisions in such a case, an interest that exists independent of, and in addition to, the public interest in Tinubu's own fitness for office.

**4. The Foreseeable-Harm Requirement**

It is no longer enough to identify an applicable exemption; Defendants must demonstrate that disclosure would foreseeably harm a protected interest, with a demonstration "focused" on the particular records and interests at stake. *Leopold*, 94 F.4th at 37; *Reporters Comm.*, 3 F.4th at 370. Defendants' submissions do not satisfy this requirement. The FBI's release letters consist of checked boxes next to exemption codes. The DEA's *Vaughn* index (ECF No. 65-2) applies recycled categorical justifications without identifying, for any document, the specific harm that would foreseeably result from disclosing that document. Where the principal subjects

are dead, the surviving subject is a head of state whose conduct is the subject of public debate in two countries, the investigation has been described in DOJ court filings for more than thirty years, and the records date to 1990–1994, the agencies cannot satisfy the foreseeable-harm test with the "abstract fear that disclosure...will lead to harassment." *Reporters Comm.*, 3 F.4th at 369-70.

### E. Exemptions 6 and 7(C) Provide No Protection for Deceased Individuals, and Neither Agency Has Inquired Into Vital Status

The privacy interests protected by Exemptions 6 and 7(C) are personal interests of living individuals which are "reduced if not extinguished" upon death. *Schrecker v. U.S. Department of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). The D.C. Circuit has recognized a limited derivative interest in narrow circumstances, most notably under *National Archives & Records Administration v. Favish*, 541 U.S. 157, 168-171 (2004), which involved surviving family members' interest in death-scene photographs, but *Favish* does not hold that all records concerning a deceased person retain privacy protection in perpetuity.

Lee Andrew Edwards and Mueez Adegboyega Akande are deceased. Whatever residual derivative interest their families may possess does not approach the *Favish* standard, and Defendants have invoked no such interest. More fundamentally, neither agency has represented that it determined the current vital status of any individual before asserting privacy exemptions on that person's behalf. An agency must take reasonable steps, such as consulting the Social Security Death Index, to ascertain whether an individual is living before assuming the existence of a privacy interest under 7(C). *Schrecker*, 349 F.3d at 663-66. Given that the records date to 1990-1994, the likelihood that additional referenced individuals are deceased is substantial. This Court should order the FBI and DEA to conduct a *Schrecker*-compliant vital-status inquiry for each individual referenced in withheld records and to re-process the withholdings accordingly.

### F. The DEA's *Vaughn* Index Is Recycled Boilerplate That Withholds 172 of Its 222 Indexed Pages in Full, and It Demonstrates No Segregability

The DEA's *Vaughn* index, ECF No. 65-2, is not a document-specific justification; it is a single paragraph reproduced over and over. Of the pages it catalogues, 172—more than three-

quarters—are withheld in full and only 50 are disclosed in part. The "Justifications for Exemptions Claimed" column repeats—for DEA-6 Reports of Investigation, DEA-202 Personal History Reports, DEA-210 Defendant Disposition Reports, the Title III "Request to Use Eavesdropping Equipment" pages, and the EPIC fax alike—the identical sentence: that releasing the records "would faciliate *[sic]* circumvention of the law, disclose the identity of the source... constitute an unwarranted investion *[sic]* of personal privacy, and endanger the safety of individuals involved." ECF No. 65-2 (capitalization and misspellings in original). The same misspellings ("faciliate," "investion," "thrid party," "signuatures") recur on entry after entry, confirming that the explanation was copied, or perhaps generated by artificial intelligence ("AI") software, rather than tailored to any document. To the extent that AI was used to process the records in this action, the Court should order Defendants to explain how and why.

Even when spelling is less atrocious, these are the kinds of categorical justifications that controlling law forbids. A *Vaughn* index must "permit adequate adversary testing of the agency's claimed right to an exemption," *King*, 830 F.2d at 218, and the foreseeable-harm statute requires a "focused and concrete demonstration" specific to the records at issue, *Reporters Comm.*, 3 F.4th at 370. A justification that does not vary across fundamentally different document types, e.g. investigative reports, biographical histories, wiretap-equipment requests, necessarily fails to demonstrate document-specific harm.

The index independently fails FOIA's segregability requirement. Withholding 172 pages "in full" demands a showing that no reasonably segregable non-exempt material exists, *Sussman*, 494 F.3d at 1116, and a segregability finding must be something more than the orthographic catastrophe provided here. "The Division's conclusion on a matter of law is not sufficient support for a court to conclude that the self-serving conclusion is the correct one." *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008). The index contains no page-level segregability analysis for any of the fully-withheld pages. The repeated assertion that records consist "entirely" of exempt material is a conclusion, not a demonstration—particularly

for biographical and investigative-report forms that ordinarily contain segregable non-exempt content such as dates, document titles, and form headings.

Two further problems appear on the face of the record. *First*, the agencies' Exemption 7(E) claims—asserted by the DEA over internal identifiers such as "NADDIS," "G-DEP," and case-file numbers, and checked off by the FBI on its release letters—cannot justify withholding entire documents. Even assuming such identifiers clear the "relatively low bar" of *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), Exemption 7(E) at most warrants redacting the identifier itself, not withholding the surrounding investigative narrative; the segregability obligation is unaffected. And like every other exemption, Exemption 7(E) is subject to the foreseeable-harm requirement, which neither agency has attempted to satisfy beyond the recital that disclosure would "faciliate circumvention of the law." To the extent any technique reflected in these 1990-1994 records is now obsolete or already publicly known, no risk of circumvention remains. *Second*, the two DEA pages withheld in full through inter-agency consultation were withheld at the FBI's instance under Exemptions 6, 7(C), and 7(F). ECF No. 65-1. The basis for invoking Exemption 7(F)—danger to life or physical safety—for 1990s records about an investigation described in public court filings, whose principal subjects are deceased or holding public office, is not self-evident, and the agencies must explain it with specificity. Even if the implication is that releasing information about Mr. Tinubu could expose him to physical harm, that sentiment has no foundation in the current record. Presumably, Mr. Tinubu is very well-protected as a nominal head of state.

### G. The DEA's Exemption 7(D) Confidential-Source Withholdings Fail Under *Landano*

The DEA invokes Exemption 7(D) across dozens of entries, asserting categorically that the records contain "confidential sources information." That is exactly what the Supreme Court held impermissible in *U.S. Department of Justice v. Landano*, 508 U.S. 165 (1993). *Landano* rejected any "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information to the FBI in the course of a criminal investigation." *Id.* at 181. The agency must instead show, source by source, either an express assurance of

confidentiality or specific circumstances from which an implied assurance can be inferred — for example, the nature of the crime investigated or the source's relation to it. *Id.* at 179-81.

The DEA's index makes no such showing. It does not distinguish express from implied assurances, does not identify the circumstances supporting any implied assurance, and applies the same "confidential sources information" label indiscriminately. Because Exemption 7(D), unlike Exemptions 6 and 7(C), does not dissolve upon a subject's death or public-official status, it cannot be left to rest on a categorical label. The 7(D) withholdings should be set aside unless the DEA makes the individualized showing *Landano* requires.

### H. The Exemption (b)(3) Withholdings Lack the Document-Specific Justification *King* Requires

Both agencies assert Exemption (b)(3) through several statutes: Federal Rule of Criminal Procedure 6(e); Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2520; the Pen Register Act, 18 U.S.C. § 3123(d); and the National Security Act, 50 U.S.C. § 3024(i)(1). Whatever the validity of these statutes as (b)(3) withholding statutes in the abstract, "identifying a statute is not the same as justifying a withholding." The agency must explain, document by document, why the specific withheld content falls within the cited statute. *King*, 830 F.2d at 224.

#### 1. Rule 6(e)

Rule 6(e) protects only "matters occurring before the grand jury," and the D.C. Circuit has held that it reaches only material that would "tend to reveal some secret aspect of the grand jury's investigation"—not all material generated during an investigation that may have led to grand jury proceedings. *Senate of Puerto Rico v. U.S. Department of Justice*, 823 F.2d 574, 582–84 (D.C. Cir. 1987). FBI 302 interviews, surveillance reports, and investigative memoranda are not 6(e) material merely because the investigation also produced grand jury activity. The FBI's checkbox invocation supplies no document-specific basis for concluding that disclosure would reveal grand jury proceedings.

#### 2. Title III and the Pen Register Act

These statutes protect the contents of wiretap and pen-register applications and orders. But the segregability requirement still applies to documents that contain such material alongside non-exempt content, and the *existence* of electronic surveillance in the underlying investigation is already a matter of public record by virtue of the criminal prosecution in *United States v. Edwards*. The agencies must justify these withholdings against the specific records, including the DEA's "Request to Use Eavesdropping Equipment" pages withheld in full, rather than by category.

#### 3. The National Security Act, 50 U.S.C. § 3024(i)(1)

The FBI invokes this intelligence-sources-and-methods statute and describes it in its own letters as "a standard response." That candid admission is the problem: a national-security exemption applied as a boilerplate "standard response" to a 1990s narcotics-and-money-laundering file is the antithesis of the document-specific justification *King* demands. The FBI should be required to justify each § 3024(i)(1) withholding individually or release the material. Nor in this admittedly rare situation is Nigeria's national security the same as the United States's national security. FOIA only contemplates the latter.

Because neither agency has provided document-specific justification for any Exemption (b)(3) claim, this Court should order the FBI to produce a complete, document-by-document *Vaughn* index for all of its withholdings and order both agencies to justify each (b)(3) claim against the specific record withheld.

### I. The Court Should Address Potential Sealed Criminal Charges Against Tinubu and Agbele, Which No Longer Justify Secrecy

Former DEA Special Agent Vincent Balbo testified in open court that Abiodun Agbele was criminally indicted, yet no such case appears on PACER, indicating that the indictment, and likely other charging and related records concerning Agbele and possibly Tinubu, remain under seal more than thirty years later. Plaintiff raised this issue on reply to his first motion for

summary judgment, ECF Nos. 44-45, where it went unaddressed. Plaintiff respectfully raises it again now in these moving papers because it bears directly on the relief FOIA permits.

*First*, a sealing order is not itself a FOIA exemption. Where an agency withholds responsive records on the ground that they are sealed, the question turns on the intent of the issuing court, and the agency must seek clarification or modification of the seal rather than treat it as a categorical bar to disclosure. *Morgan v. U.S. Department of Justice*, 923 F.2d 195, 197-98 (D.C. Cir. 1991). Defendants have never represented that they have done so.

*Second*, the public's common-law and First Amendment rights of access to judicial records and criminal proceedings independently favor unsealing. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99 (1978) (common-law right to inspect and copy judicial records); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10 (1986) (First Amendment right of access to criminal proceedings); *Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991); *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980). The party seeking to maintain a seal bears a heavy burden, and a decades-old indictment arising from an investigation that the USDOJ has already officially acknowledged, of a man now serving as a foreign head of state, cannot meet it. Whatever interest once justified secrecy has long since evaporated.

*Third*, Plaintiff recognizes that any charging documents were likely filed in the district where the criminal prosecution occurred, and that full unsealing may ultimately require application to that court. But that does not leave this Court powerless. The USDOJ, which is the parent of both remaining Defendants and itself the prosecuting authority, is before this Court. The Court can and should order Defendants and their parent agency to (a) identify any responsive records withheld, in whole or in part, on the ground that they are sealed, and (b) move promptly, in the appropriate court, to unseal the charges and related records concerning Tinubu and Agbele, or to state under oath why they cannot. At a minimum, the Court should decline to treat "sealed" status as a self-executing justification for withholding under FOIA.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant summary judgment for Plaintiff and order the following:

(1) As a matter of law, that Defendants' withholdings, as currently justified, fail FOIA's foreseeable-harm requirement (5 U.S.C. § 552(a)(8)(A)(i)(I)) and segregability requirement (5 U.S.C. § 552(a)(8)(A)(ii)(II)), and that the DEA's Exemption 7(D) and the agencies' Exemption (b)(3) claims fail the document-specific standards of *Landano* and *King*;

(2) That, within 14 days, Defendants release all responsive records, and all reasonably segregable portions of records, not supported by a compliant, document-specific *Vaughn* index and foreseeable-harm analysis;

(3) That the FBI provide a supplemental declaration stating the search terms used to scope the ~48,000-page multi-subject file, whether sub-file 245-IP-71386-UUUUUU was identified and searched, what responsive records were located, and how Form 302 interviews responsive to Request No. 1593615-000 were identified;

(4) That Defendants conduct a *Schrecker*-compliant inquiry into the current vital status of each individual referenced in withheld records and re-process privacy withholdings accordingly;

(5) That the FBI produce a complete, document-by-document *Vaughn* index for all withholdings, including a foreseeable-harm analysis and document-specific justification for each Rule 6(e), Title III, Pen Register Act, and § 3024(i)(1) claim, and that the DEA justify each Exemption 7(D) claim on a source-by-source basis as *Landano* requires;

(6) In the alternative to (2), that the Court conduct *in camera* review of a representative sample of the withheld records; and

(7) That Plaintiff be awarded his costs pursuant to 5 U.S.C. § 552(a)(4)(E).

Dated: June 25, 2026

Respectfully submitted,

Aaron Greenspan
440 N. Barranca Avenue #6720
Covina, CA 91723
Phone: +1 415 670 9350 x101
E-Mail: aaron.greenspan@plainsite.org